Rudman M. Price, Respondent, *v.* Edmund Keyes et al., Appellants.

In an action brought by a principal who has given to agents power to sell, brought against the agents and a purchaser, charging a fraudulent sale, in pursuance of a conspiracy on the part of defendants for the purpose of depriving plaintiff of the title to, and sacrificing his property by means of the power of sale, a failure to establish fraud, on the part of the purchaser, will not prevent a recovery against the agents, if it appear that they confederated together for the purpose, and sold the property in disregard of plaintiff's interest, and with a view to their personal profit.

Proof that an agent has exceeded his authority, and that a loss has resulted therefrom, will not alone support an action by the principal against him for fraud.

Where an agent, vested with a power to sell the property of his principal, makes a sale within the limits of his authority, which he believes to be for the best interest of his principal, the fact that, in making the sale, the impelling motive which actuated him was the compensation he was to receive, not his duty to his principal, does not give the latter a right of action for fraud in case the sale proves disadvantageous.

*Price* v. *Keyes et al.* (1 Hun, 177 ; 3 T. & C., 720) reversed.

(Argued February 19, 1875; decided September 21, 1875.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, in favor of plaintiff against defendants Keyes and Scott, and in favor of defendants Payne and Dewey. (Reported below, 1 Hun, 177; 3 T. & C., 720.)

This action was brought for an alleged fraudulent conspiracy between the defendants, and a fraudulent sale in pursuance thereof, of plaintiff's property, made by defendants Keyes and Scott, as his agents, to defendants Payne and Dewey.

Plaintiff owned a large amount of real estate in California, upon which were various liens and incumbrances. Prior to 1853, defendant Keyes had been his agent, having a power of attorney authorizing him to sell. Upon his leaving California, a new power of attorney was executed by plaintiff to defendant Scott, authorizing him to take charge of and manage the property and to sell the same. The power of sale was, "to sell and mortgage any real estate belonging to me (plaintiff) in the State of California." Keyes returned to California in June, 1853, under an arrangement with plaintiff that he was to continue to act as the agent of the latter; plaintiff's testimony tended to show that his oral instructions were to sell the property in parcels. On his arrival in California, as defendants claimed, and as their testimony tended to show, he found the property in such a condition on account of the incumbrance, that the judgment of himself and Scott required it to be sold. He and Scott together negotiated a sale of the whole property to defendants Payne and Dewey, for $135,000, and the further sum of $5,000, to be paid toward the agents' commissions. Scott, under his power of sale, executed a deed. Keyes and Scott charged one per cent for commissions, and claimed to have applied the balance of the purchase money to pay off the incumbrances. The property was claimed by plaintiff to have been worth about $500,000.

The court charged in substance, that before the jury could render a verdict against any one of the defendants, they must

be satisfied, not that defendants had misjudged as to what was best for plaintiff's interests, but that they have willfully and deliberately perpetrated a fraud upon him for the purpose of gain to themselves or to some one else.

Defendants' counsel requested the court to charge, among other things: "That this action is brought for an alleged conspiracy to defraud the plaintiff, and unless that conspiracy is proved to the satisfaction of the jury, the plaintiff is not entitled to a verdict in this action."

To this the court replied: "That proposition, generally, is true, but when I adopt this word 'conspiracy,' which is placed before me by the counsel for the defendants, I do not mean that it is necessary there shall be a conspiracy beforehand, and that all shall have entered into connection with this design, at the same time. It is enough that any one of the defendants, or any more than one of the defendants, conceived the design of defrauding the plaintiff, and that others of the defendants united in that design before it was accomplished. Although this action was originally brought against four persons, three of them only are before you, in consequence of the death of the fourth, Mr. Payne. If from the evidence you believe that all of these three conspired together, in the sense in which I have presented the matter to you, then your verdict will be against all of them [if you find that two of them did, then your verdict will be against those two. If you find that one of them alone conceived this design to defraud the plaintiff, and the others acted with him, though ignorant of such design, he alone is responsible. Therefore, you see that in my view, the action may be sustained against one of these defendants, where there could be no conspiracy, because one cannot conspire alone. In other words, as the evidence shall satisfy you, your verdict may be against all of the defendants, two of the defendants, one of the defendants], or none of them."

To the portion of the charge included in brackets, defendants' counsel excepted. Said counsel also requested the court to charge: "That if the defendants Keyes and Scott

believed at the time of making the sale in question that such sale was best for the interest of the plaintiff, he cannot recover in this action."

The court responded : " That proposition in the main is true [and yet if the motive which operated upon these men was not an honest discharge of their duty toward the plaintiff — if they were moved upon by the consideration of obtaining this $13,500, or $18,500 to themselves, or a smaller portion to one of them, and a larger portion to the other, and that was their object in selling, then the action can be sustained against them]."

To so much as is included in brackets, the defendants' counsel excepted.

Further facts appear in the opinion.

*Amasa J. Parker* and *James C. Carter* for the appellants.

*Ashbel Green* and *Samuel Hand* for the respondents.

ANDREWS, J.  The conveyance by Scott to Payne and Dewey was within the terms of the authority conferred upon Scott by Price by the power of attorney of December 3, 1852. By that instrument he was authorized to sell any real estate belonging to Price in California, without limitation as to the manner of sale; and a sale in gross or in parcels was equally authorized by the power.  The private instructions which it is alleged were given by Price, to sell in parcels only, would not affect the title of purchasers who in good faith purchased from the agent and took a conveyance of the whole estate upon the faith of the written authority and without knowledge of the secret restrictions imposed upon the agent by the principal.  The theory upon which Payne and Dewey were made defendants in the action, viz., that they conspired with Keyes and Scott to obtain a conveyance of the property at a price below its value, knowing that the sale was a violation of the instructions of Price, was not supported by evidence, and was conclusively negatived by the verdict of the jury.

The case was submitted to the jury as to all of the defendants; but the circumstances relied upon to establish the charge of fraud or collusion on the part of Payne and Dewey were so trivial that a verdict against them would not, we think, have been justified.

The court, on the trial, in view of the fact that the charge of conspiracy against the purchasers might not be found by the jury to be true, correctly held that the failure to establish fraud on their part would not prevent a recovery against Keyes and Scott if the jury should find that they confederated to deprive the plaintiff of his title to the property and to sacrifice it by means of a sale under the power, in disregard of his interests, and with a view to their personal profit and advantage. The verdict of the jury against Keyes and Scott must have proceeded upon the ground that they were guilty of fraud in making the sale. The complaint was in fraud, charging a fraudulent combination and conspiracy to injure the plaintiff. The case throughout the trial was treated as one based on fraud; and in the elaborate charge of the learned judge to the jury no other basis for a recovery is suggested; and, indeed, any other ground of recovery was distinctly excluded from their consideration.

There was evidence tending to show that a sale of the property in gross was in violation of oral instructions given by the plaintiff to Keyes, who negotiated the sale and acted in the matter, together with Scott, as agents for the plaintiff, although Scott was the nominal agent, holding the power under which the conveyance was made. If the agents sold the property in violation of instructions they committed a breach of duty and subjected themselves to liability to their principal. But a departure by an agent from his instructions does not *ipso facto* constitute fraud. It is competent evidence on the issue of fraud in an action by the principal against him, and, with other circumstances, may satisfactorily establish it. Agents frequently overstep the limits of their authority, and it is quite conceivable that it is often done in the supposed interest of their principal. In such cases they

take the risk. If the principal ratifies the act, they stand justified. If he disaffirms it and suffers loss from it, the agent is responsible. But proof that an agent had transcended the limits of his authority, would not alone support an action by the principal for a fraudulent misuse of his power.

In this case, although the jury may have believed that Keyes and Scott had been instructed by Price not to sell the land in gross, they might also have believed, if they credited their testimony, that they were induced to depart from the instruction by reason of exigent circumstances not known to them or to Price when the instruction was given, and with the view of thereby benefiting their principal and avoiding a compulsory and less advantageous sale of the property. If they were actuated by such motives they could not be charged in fraud, but they would be liable to Price for any injury he had suffered from their unauthorized act. This distinction the judge had in view when he told the jury in substance that the violation of instructions by Keyes and Scott, in making the sale, would not alone support the action.

The learned judge at the conclusion of the evidence was asked to charge the jury: "that if the defendants Keyes and Scott, believed at the time of making the sale in question that such sale was best for the interest of the plaintiff, he could not recover in the action." To this request the judge responded as follows: "That proposition in the main is true, and yet if the motive which operated upon these men was not an honest discharge of their duty towards the plaintiff, if they were moved upon by the consideration of obtaining the $13,500, or $18,500, to themselves, or a smaller portion to one of them, and a large portion to the other, and that was their object in selling, then the action can be maintained against them."

The judge engrafted upon the proposition which he was requested to charge, a qualification, and as thus qualified, charged it. That the judge did not intend to charge the proposition presented is manifest. That proposition, he said, was

in the *main* true, and followed this statement by limiting and qualifying words which can only be construed as denying the proposition presented as applied to the case, except as thus qualified.  In substance the judge refused the instruction asked, and then proceeded affirmatively. to instruct the jury. as to the effect upon the cause of action, of a belief in the minds of Keyes and Scott that the sale was best for the plaintiff in case they did not act upon it in making the sale, but from selfish and interested motives.   The scope and effect of the instruction was that the existence of such a belief in their minds, did not repel the charge of fraud, if they acted in making the sale solely from the selfish motive of obtaining their commissions.   The instruction given and · to which exception was taken, assumed that the sale was authorized by the power conferred upon the agents, and in considering its correctness, the controverted question whether they were limited by private instructions from Price, not to sell the land in bulk, may be laid out of view.

It is the unquestionable duty of an agent to act in matters touching the agency with a sole regard to the interests of his principal.   The agent in accepting the employment undertakes to manage the interests confided to him and discharge the trust reposed in him to the best of his ability, for the benefit of his principal.   The compensation to which he is entitled is the consideration for the engagement into which he enters.   The reward is the inducement to the service, and faithful service is generally the condition upon which the reward becomes due. An agent for sale cannot sacrifice the property of the principal for the sake of his commissions, but the desire of earning them is generally a motive to diligence, and an incentive to exertion. When the duty and interest of the agent coincide, and he does the act which his duty prompts, but the impelling motive is the interest which he is to derive from it, and not the duty, the act must stand justified although the motive may be criticised.   There is in the case supposed, no conflict between his duty and his interest.   The act corresponds with the duty but the motive which prompted it is a low and inferior one.

This cannot however affect the validity of the act as between the principal and agent.

In this case it was the duty of Keyes and Scott to sell the property, if upon reasonable grounds they believed the sale was for the best interest of Price, and an omission to do so would have been a breach of duty, subjecting them to liability to Price, in case he sustained loss by the omission. They were bound, under the circumstances supposed, to make the sale, and because they did not act upon the higher motive of duty, but upon the lower one of self-interest, the principal has no legal ground for complaint. It is immaterial that it has turned out that it would have been better for him to have retained the property. The agents did what their duty required them to do, and the act must be held to relate to the duty, when they are called upon to justify themselves to their principal. A mere belief by agents employed to sell that a sale was for the principal's interest would not, in all cases, protect them in making a sale, although it was within the terms of the power. They contract to exercise reasonable diligence, care, and judgment in the management of the business intrusted to them. If they omit to exercise them, and in consequence made an unwise sale for an inadequate consideration, they could not escape responsibility for the loss sustained by the principal, because they believed at the time that the sale was wise and for the full value of the property. But the recovery in such case would be founded upon the contract between the parties, whatever the form of the action might be. Fraud could not be predicated of the transaction. And whenever an agent, invested with a power to sell the property of his principal, makes a sale within his authority which he believes to be for the best interest of the principal, the fact that in making it the impelling motive which actuates him was self-interest, and not his duty to his principal, does not, as I conceive, give the principal a right of action against him for fraud in case the sale proved disadvantageous. The intention of the agent to defraud the principal does not exist in fact, and cannot be imputed to him. The opposite view was

taken by the learned judge at the trial, if I correctly under-
stand the charge.  He did undoubtedly charge the jury, in
general terms, that to sustain the action they must be satisfied
that the defendants willfully and deliberately perpetrated a
fraud upon the plaintiff.  But the import of the portion of
the charge which has been considered was that a sale under
the circumstances, and with the motive therein stated, was
such fraud as would support the action.  In this we are of
opinion the learned judge erred.  The question was a most
material one, and for this error, and without considering the
other questions in the case, the judgment should be reversed
and a new trial ordered.

All concur; except ALLEN, J., not voting.  RAPALLO, J.,
not sitting.

Jugment reversed.